972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mister T. HILLARY, Defendant-Appellant.
 No. 91-5699.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 8, 1992
Decided: August 13, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore.
 Tyler Christian Johnston, Assistant Federal Public Defender, for Appellant.
 John Francis Purcell, Jr., Assistant United States Attorney, for Appellee.
 Fred Warren Bennett, Federal Public Defender, for Appellant.
 Richard D. Bennett, United States Attorney, Brent J. Gurney, Assistant United States Attorney, for Appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 The defendant, Mister Hillary ("Hillary"), brought the instant appeal challenging his conviction on drug trafficking and firearm offenses, arguing that the district court abused its discretion by failing to grant his motion for a mistrial following a government witness's spontaneous statements that Hillary had been in jail for another uncharged offense.
 
 
 2
 Hillary was convicted by the jury of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and of using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). He was sentenced to 78 months for the drug offense and 60 months for the firearm offense, the sentences to run consecutively. The instant appeal followed.
 
 I.
 
 3
 Pursuant to a search warrant, Annapolis Police raided Hillary's apartment. During the search the officers found the following items in the back bedroom: 47 individually wrapped packages of crack cocaine totaling 28.5 grams; one fully loaded 9 millimeter semiautomatic pistol; one fully loaded Ruger .22 caliber revolver; one .357 magnum revolver; one fully loaded .32 caliber semi-automatic handgun; one fully loaded .380 caliber semi-automatic handgun, various boxes of ammunition; $2,800 in cash; and baggies used to package crack. Although the residence in question was leased by Audrey Matthews, who testified as a Government witness, Hillary was living in the back bedroom in which the drugs were located. Testimony indicated that an individual named Michael Tracey also occasionally lived in the back bedroom and had access to such room.
 
 
 4
 Testimony by Hillary's girlfriend, Jocelyn Coates, indicated that she and Hillary were in his bedroom (the back room where the drugs were found) immediately prior to the raid. She testified that Hillary heard noise outside the bedroom and looked out the window, stating after an expletive "it's a raid." He removed a gun from his pants, placing it on the floor, and ran into the hallway.
 
 
 5
 During the search of the apartment, officers found an unlocked briefcase on the floor next to the bed in Hillary's room, containing the four loaded firearms and boxes of ammunition. A box of ammunition was found on the floor outside the briefcase and 47 packages of crack cocaine were found under the mattress of Hillary's waterbed. The $2,800 in cash was found in Hillary's dresser and the baggies were found on the headboard of the bed.
 
 
 6
 At trial, Coates testified that Hillary sold crack three or four times per week. She also testified that the bed, bicycle, stereo, dresser and VCR in the bedroom where the drugs were found belonged to Hillary. Audrey Matthews, who lived in the apartment, testified that Hillary sold crack every day, that the apartment was "an open drug store" and that Hillary gave her all the crack she could smoke as rent for his room.
 
 
 7
 During direct examination of Matthews, she blurted out, when asked by prosecutors when Hillary had come to live with her, that "he came from jail." When the prosecutor asked Matthews how long she lived with the defendant, she responded "until he went to jail." Defense counsel vehemently objected and moved for a mistrial.
 
 
 8
 The district court struck Matthews' references to jail from the record, instructed the jury that "nothing could be more irrelevant" and that the testimony was not to be considered in any way whatsoever. The court took a brief recess and admonished Matthews not to refer to any incarceration of Hillary. When the jury returned the district court again admonished the jury not to consider the evidence and instructed the jury that Hillary had no criminal record. The court reserved ruling on the motion for a mistrial. However, the following day, the district court denied the motion for a new trial, holding that evidence against Hillary was strong, that the curative instruction had cured any error and that no prejudice was suffered. The court also emphasized the fact that the jury had been expressly informed that Hillary had no criminal record.
 
 
 9
 The jury convicted Hillary of the drug offense and firearm offense. Hillary has argued, on appeal, that the district court abused its discretion by failing to grant his motion for a mistrial because of Matthews' testimony that Hillary had previously been incarcerated. However, because the evidence supporting the convictions was extremely strong, and because the district court provided a strong curative instruction, we affirm.
 
 II.
 
 10
 In determining whether a district court abused its discretion in denying a motion for a mistrial based upon the introduction of inadmissible evidence, we must determine whether the"Government solidly proved its case" against Hillary and whether the "curative instruction of the district judge was sufficient to dissipate whatever ... amount of prejudice may have been created" by the inadmissible testimony. See United States v. Johnson, 610 F.2d 194, 196 (4th Cir. 1979), cert. denied, 446 U.S. 911 (1980). Furthermore, such a determination must be made "on the basis of the record in its entirety and the result will generally turn on the facts of each case. Id. We have held that "absent other indications of prejudice or evidence of intentional prosecutorial misconduct," an instruction by the court will normally cure any unfairness to a defendant. United States v. Moore, 710 F.2d 157, 159 (4th Cir.), cert. denied, 464 U.S. 862 (1983). To find harmless error, however, we must conclude that, on the facts of the instant case, it is " 'highly probable' that the careless elicitation [of confinement] did not affect the judgment in this case." United States v. Vogt, 910 F.2d 1184, 1193 (4th Cir. 1990), cert. denied, 111 S. Ct. 955 (1991).
 
 
 11
 In the instant case, the evidence of Hillary's guilt was overwhelming. At the time of the raid, Hillary was in his bedroom with the crack under the mattress of his waterbed, semi-automatic weapons and ammunition were on the floor, $2,800 in cash was in his dresser, and a pistol was in his pants. He remarked "It's a raid" when he heard officers outside and attempted to run from the police. His girlfriend, uncle, and uncle's girlfriend all testified that Hillary was a drug dealer. Therefore, the impact of Matthews' statement about jail was small in comparison to the impact of the above testimony and no prejudice has been shown by Hillary.
 
 
 12
 Furthermore, the district court carefully and strongly admonished the jury not to consider the impermissible testimony and the court issued strong curative instructions, including an instruction that Hillary did not have a criminal record. Moreover, the district court found that there was no prosecutorial misconduct and that the incident was not the fault of the Government.
 
 
 13
 Nothing in the record indicates any prosecutorial misconduct. In fact, the record indicates that the reference to Hillary's prior incarceration was unexpected and spontaneous, in response to an innocuous question regarding when Hillary came to live in the apartment in which the drugs were found. The overwhelming evidence of Hillary's guilt, rendered the error harmless. See Vogt, 910 F.2d at 1193 (citing United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980)). Accordingly, the district court's decision to deny Hillary's motion for a mistrial is AFFIRMED.